**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CITY OF WEBSTER GROVES, MO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-CV-1910 RLW |
| ) | |
| CCATT LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Plaintiff City of Webster Groves, MO's ("City") Motion to Dismiss Defendant CCATT LLC's Counterclaim (ECF No. 33) under Federal of Civil Procedure 8(a), 10(b), and 12(b)(6). The Motion has been fully briefed. The Court will grant the Motion to the extent that CCATT LLC ("CCATT") will be ordered to amend its Counterclaim to replead its causes of action in Count I in separate counts as required by Rule 10(b) of the Federal Rules of Civil Procedure. The Motion is denied in all other respects.

**Factual and Procedural Background**

I.

This action is a dispute over amounts allegedly due under and the attempted termination of a Ground Lease dated August 15, 1997 (the "Lease") of certain real property located in and owned by the City for the construction and operation of a communications tower (the "Tower Site"). The City sued in state court and asserted claims for breach of contract (Count I), declaratory judgment (Count II), and unlawful detainer (Count III). The case was removed to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and

1446.  CCATT filed an Answer, Affirmative Defenses, and Counterclaim (ECF No. 18) asserting one count of breach of contract/breach of the implied covenant of good faith and fair dealing.

The City filed a Motion to Remand this case to state court (ECF No. 20).  The next day, the parties filed a joint Motion to Stay the case (ECF No. 24) pending resolution of the Motion to Remand.  The Court granted the Motion to Stay and stayed the case (ECF No. 26).  It subsequently denied the Motion to Remand and lifted the stay by Memorandum and Order of September 3, 2019 (ECF No. 31).  The City then filed the instant Motion to Dismiss CCATT's Counterclaim.  (ECF No. 33.)

The Court issued a Case Management Order on October 1, 2019 (ECF No. 42), and referred the case to alternative dispute resolution on December 18, 2019.  (ECF No. 45.)  The parties attended mediation on March 5, 2020, and filed a Memorandum that stated in part:

> At the recommendation of the mediator, the Hon. Mark D. Seigel, the parties agree that they will attempt to negotiate in good faith, within 60 days and by May 5, 2020, a new lease and a resolution of the litigation.  The parties recognize that this period of negotiation will result in the necessity for the extension of pretrial scheduling agreement and the trial setting.  The parties agree that they will request an extension of pretrial discovery and a new trial setting.  The foregoing agreement reflects the parties' desire to focus their efforts on settlement and otherwise conserve judicial resources.

(ECF No. 50).  The parties subsequently filed two Joint Status Reports which stated that settlement negotiations were ongoing, requested additional thirty-day periods for those efforts, and asked that the action remain stayed during the negotiations.[1]  (ECF Nos. 53, 55.)  The parties' third Joint Status Report states that "they do not believe that further settlement discussions and a continued stay would be fruitful at this time."  (ECF No. 57 at 1.)

---

[1]The case has not been stayed since the stay was lifted by Memorandum and Order of September 3, 2019, although the parties' Joint Status Reports (ECF Nos. 53, 55, 57) and the Court's Docket Text Orders (ECF Nos. 54, 56) have erroneously referred to the existence of a stay.

Accordingly, the Court will address the City's Motion to Dismiss CCATT's Counterclaim and then issue an amended scheduling order.

II.

CCATT's Counterclaim alleges that in August 1997, the City entered into the Lease with Eastern Missouri Cellular Limited Partnership, a predecessor in interest to Defendant New Cingular Wireless PCS, LLC ("New Cingular"). (Doc. 18 ¶¶ 2-3.) CCATT pleads on information and belief that in April and May of 2013, the City and New Cingular entered into a First Amendment to Ground Lease (the "Amendment") which, among other things, significantly extended the term of the Lease and increased the amount of rent to be paid thereunder in the future. (Id. ¶ 4.) The Amendment was executed by Steven Wylie, the City's City Manager. (Id. ¶ 5.) The Amendment includes a "Landlord Acknowledgment" of representative capacity signed by a notary public of the State of Missouri that states:

> I certify that I know or have satisfactory evidence that Steven Wylie is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the City Manager of City of Webster Groves, to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

(Id. ¶ 6; (ECF No. 18-2 at 7)) (emphasis added).

Section 10 of the Amendment states:

> 10. **Charges**. All charges payable under the Lease such as utilities and taxes shall be billed by Landlord within one (1) year from the end of the calendar year in which the charges were incurred; any charges beyond such period shall not be billed by Landlord, and shall not be payable by Tenant. The foregoing shall not apply to Base Rent which is due and payable without a requirement that it be billed by Landlord. The provisions of this subsection shall survive the termination or expiration of the Lease.

(Id. ¶ 19; (ECF No. 18-2 at 5.)) CCATT alleges that to be payable under the Lease as amended by the Amendment, any charges incurred in a calendar year must be billed by the City within one

year from the end of that calendar year, and any charges not billed within that time period are not payable and/or are waived.  (ECF No. 18 ¶¶ 20-22.)

In a series of transactions in October through December of 2013, nonparty Tower Holdings succeeded to New Cingular's rights as tenant under the Lease and Amendment.  By written agreement, Tower Holdings retained CCATT to exclusively manage and operate the Tower Site.  (Id. ¶¶ 10-11.)

On June 6, 2018, the City sent a Notice of Default/Underpayment letter demanding payment of alleged but unbilled charges, including interest and late fees, dating back to at least 2004 and claimed to total in excess of $200,000, including compound interest although the Lease does not require payment of compound interest.  (Id. ¶¶ 27-31.)  CCATT responded that Section 10 of the Amendment precluded payment of most of the alleged unbilled charges, and the City responded verbally in a June 28, 2018, telephone conference that the Amendment was void because it was not properly authorized by the City.  (Id. ¶¶ 32-34.)

CCATT and the City thereafter engaged in discussions and exchanged letters as to the City's position that the Amendment was void.  Among other things, CCATT requested documentation supporting the City's position and offered to cure.  (Id. ¶¶ 36-40.)  By letter of July 25, 2018, the City rejected CCATT's offer to cure, purported to terminate the Lease, and demanded that CCATT vacate the Tower Site and replace the tower with a light standard.  (Id. ¶¶ 39-41.)  By letter of August 8, 2018, CCATT responded that the purported termination was premature and invalid.  (Id. ¶ 41-46.)  CCATT and the City subsequently continued to dispute whether amounts were past due under the Lease or Amendment and what amounts may be due.  Ultimately, the City has claimed that CCATT owes $592,659.57 in compound interest and late fees alone, though it has only identified or claimed alleged unpaid rent of $33,778.11.  (Id. ¶¶ 47-

48.) On September 14, 2018, CCATT made a payment to the City under a reservation of rights in the amount of $80,147.48, the amount of its settlement offer made to the City but rejected by it in July 2018. (Id. ¶ 49.) CCATT's position is that no further payments are due, but the City contends that amounts—some unspecified and undocumented—are due dating back nearly to the Lease's inception, and it continues to demand that CCATT vacate the Tower Site and replace the tower with a light standard. (Id. ¶ 50.) CCATT asserts that none of the City's continued demands are required because the City's notice of default was deficient and ineffective, the Lease was never properly or validly terminated, and it has made payments in excess of amounts that could possibly be owed. (Id. ¶ 51.)

**Legal Standard**

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In reviewing a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and construes all reasonable inferences in the light most favorable to the nonmoving party. Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir.), cert. denied, 140 S. Ct. 607 (2019). The Court does not accept as true a pleader's conclusory allegations or legal conclusions drawn from the facts, however. Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019). The complaint must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the

defendant is liable for the misconduct alleged." Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted).

In addressing a motion to dismiss, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (cited case omitted).

**Discussion**

A. The Counterclaim Complies With Rule 8(a)

The City first moves to dismiss on the basis that CCATT's Counterclaim violates Rule 8(a) because it fails to include a short and plain statement of facts that would establish the existence of a valid contract. The City's Rule 8(a) argument incorporates its Rule 12(b)(6) argument, and asserts that while CCAAT attempts to allege a breach of the Amendment, its Counterclaim actually establishes that the Amendment was never a valid contract between the parties. This argument fails.

Rule 8(a)(2) "requires a short and plain statement showing the pleader is entitled to relief, and that each allegation in the pleading be simple, concise, and direct." Cody v. Loen, 468 F. App'x 644, 645 (8th Cir. 2012) (unpublished per curiam). The primary purpose of Rule 8 is to allow the Court and the opposing party to understand whether a valid claim is alleged and, if so, what it is. Id. The complaint must be sufficiently clear so the Court or opposing party "is not required to keep sifting through it in search of what it is plaintiff asserts." Id. (citing Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 775-76 (7th Cir. 1994)).

Dismissal for violation of Rule 8(a) is appropriate where a complaint is so lengthy, disorganized, vague, or ambiguous as to be unintelligible. Cf. Michaelis v. Nebraska State Bar Ass'n, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of a 98-page pro se complaint, the

"style and prolixity" of which "would have made an orderly trial impossible."); Smith v. Republic Servs., Inc., 2017 WL 4038143, at *3 (E.D. Mo. Sept. 13, 2017) (dismissing complaint under Rule 12(b)(6), noting it violated Rule 8(a) because it did not contain numbered paragraphs, was "overly wordy with an incomprehensible pattern of capitalized and not capitalized words," and failed to clearly identify each defendant by name and articulate specific facts about that defendant's wrongful conduct); Favaloro v. BJC Healthcare, 2015 WL 1603054, at *2 (E.D. Mo. Apr. 9, 2015) (denying leave to file amended complaint for failure to comply with Rule 8 in a relatively simple employment action where the complaint was "90 pages long, include[d] 959 paragraphs, multiple subparagraphs, sub-subparagraphs (i.e., ¶¶ 800.68.1, 800.68.2, 800.68.2, et seq.), and contain[ed] wholly irrelevant and scandalous material.").

Here, CCATT's Counterclaim is twelve pages long and consists of separately numbered paragraphs. It does not violate Rule 8(a). The gist of the City's Motion to Dismiss is that the Counterclaim violates Rule 8(a) because it does not "set forth a short and plain statement of facts that would establish the existence of a valid contract." (ECF No. 34 at 4.) This argument is appropriately raised through a Rule 12(b)(6) motion, not under Rule 8(a). This aspect of the City's Motion will be denied.

2. The Counterclaim Fails to Comply With Rule 10(b)

The City next moves to dismiss on the basis that CCATT's Counterclaim violates Rule 10(b), Fed. R. Civ. P., because it alleges multiple factual circumstances and allegations in a single numbered paragraph, specifically identifying paragraphs 55, 56, and 57; and combines claims for both breach of contract and breach of the implied duty of good faith and fair dealing as to both the Lease and the Amendment in the sole count of the Counterclaim.

Rule 10(b) states as follows:

> **(b) Paragraphs; Separate Statements**. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a statement of a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). Thus, Rule 10(b) establishes the requirements for pleading separate claims. While Rule of Civil Procedure 8(e)(2) "allows a party to set forth two or more statements of a claim in one count, … Rule 10(b) requires pleading separate counts for each distinctive statutory and constitutional claim." Iowa Health Sys. v. Trinity Health Corp., 177 F.Supp.2d 897, 905 (N.D. Iowa 2001) (quoted case omitted). "[T]he ultimate question under Rules 8(e) and 10(b) would seem to be whether 'the theory and basis of the [various] counts are easily distinguishable.'" Id. at 906 (quoted case omitted).

Here, CCATT has combined into a single count its claims for breach of contract and breach of the duty of good faith and fair dealing. "Breach of the implied duty of good faith and fair dealing is a contract action." Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc., 532 S.W.3d 180, 188 (Mo. Ct. App. 2017) (quoted case omitted). The elements of the cause of action are different, however, from those of a breach of contract action. The essential elements of a breach of contract action are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010) (en banc).

The elements of a claim for breach of the covenant of good faith and fair dealing are that one party exercises a judgment conferred to it by the express terms of the parties' agreement in a manner that evades the spirit of the transaction or denies the other party the expected benefit of the agreement. Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 514 (8th

Cir. 2018) (quoting Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866, 877 (Mo. Ct. App. 2012)); Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1112 (8th Cir. 2006) (same); Rock Port Mkt., 532 S.W.3d at 188 (same). "When a decision is left to the discretion of one party, the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." Missouri Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 48 (Mo. Ct. App. 2002).

Here, the basis for CCATT's separate claims for breach of contract and breach of the duty of good faith and fair dealing is not readily discernable from its Counterclaim. CCATT's failure to present its claims in separate counts has resulted in unclear allegations and imprecise memoranda. The Court will grant the City's Motion to Dismiss based on Rule 10(b) and order CCATT to file an amended Counterclaim to set forth its claims in separate counts.

  3. The City's Rule 12(b)(6) Motion Fails

Finally, the City moves to dismiss CCATT's Counterclaim and opposes any amendment thereto on the basis that CCATT fails to state a claim upon which relief can be granted for either breach of contract or breach of the duty of good faith and fair dealing. The City asserts that to successfully plead a claim for either cause of action, CCATT must plead facts to establish the existence of a valid, enforceable contract, and it fails to do so. The City asserts that CCATT alleges facts and attaches documents to its Counterclaim that establish the Amendment was not a valid and enforceable contract because it lacked approval by the City Council, and therefore its claims fail by operation of Missouri statute. The City points to an unsworn statement signed by its City Clerk (ECF No. 18-5) attached to the Counterclaim, which states that the Clerk reviewed City records and did not find a Council ordinance, resolution, or recorded vote approving a purported 2013 Amendment to the Lease. The City argues this statement defeats CCATT's

- 9 -

claims against it because without such action by the City Council the Amendment is void under Missouri statute.

This argument fails on a motion to dismiss. First, CCATT's Counterclaim appears to allege breaches of contract and the duty of good faith and fair dealing with respect to the original Lease–the validity of which is not in question—as well as the Amendment to the Lease.[2] The City's Motion to Dismiss for failure to state a claim ignores CCATT's allegations concerning breaches related to the Lease, which would be unaffected even if the Amendment is void.

Second, as set forth above, CCATT's Counterclaim pleads facts concerning the existence of and details of formation of the Amendment, which the Court must accept as true on a motion to dismiss. See Usenko, 926 F.3d at 472. CCATT alleges the City executed the sworn "Landlord Acknowledgement" confirming it authorized execution of the Amendment, and attaches a copy of it to the Counterclaim. The unsworn City Clerk's statement also attached to the Counterclaim merely evidences a disputed issue of fact that is not appropriate for resolution on a motion to dismiss. The possible effect of the Missouri statute comes into play only after resolution of the fact dispute.

The City's Motion to Dismiss for failure to state a claim will be denied.

**Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part the City's Motion to Dismiss CCATT's Counterclaim. The Motion will be granted to the extent CCATT must file an amended counterclaim that sets forth its claims in separate counts. The Motion will be denied in all other respects.

---

[2]Because the Court has ordered CCATT to amend its Counterclaim, CCATT will have the opportunity to clarify how its claims for breach of contract and breach of the duty of good faith and fair dealing apply to both the Lease and the Amendment thereto.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff City of Webster Groves, MO's Motion to Dismiss Defendant CCATT LLC's Counterclaim (ECF No. 33) is **GRANTED in part** and **DENIED in part**; the Motion is **GRANTED** to the extent CCATT LLC shall file an amended counterclaim that complies with Rule 10(b), Fed. R. Civ. P., within twenty-one (21) days of the date of this Memorandum and Order. The Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and submit to the Court a jointly proposed amendment to the Case Management Order by **July 30, 2020**.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 21st day of July, 2020.